## UNION PAC. R. CO. v. UNITED STATES.

Nos. 48995, 50151.

United States Court of Claims.

Jan. 13, 1953.

Lawrence Cake, Washington, D. C., for plaintiff. Raymond Negus, Washington, D. C., was on the brief.

John I. Heise, Jr., Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff, a common carrier by railroad, sues for an amount representing the difference between the regular freight rate charged to defendant and the land grant rate to which defendant claims it is entitled on articles and commodities owned by defendant and carried over plaintiff's lines. The amount in question was originally paid as billed, but the difference was either refunded to defendant or withheld by defendant from amounts otherwise due plaintiff on other shipments.

It is plaintiff's position that defendant was not entitled to land grant rates on the particular shipments involved, because they were not military property of the United States moving for military use within the

meaning of section 321 (a), Title III, Part II, of the Transportation Act of 1940, 54 Stat. 898. This is the issue presented.

These two cases have been briefed and argued together, since they present the same question of law. There is no dispute as to the facts.

From December 1945 to September 1946, in conjunction with other common carriers, plaintiff transported a number of shipments of paper bags, nitrogen fertilizer solution, and Kaolin-type ground clay from various points in the United States to the Cornhusker Ordnance Plant at Coplant, Nebraska. During the period in question the plant was operated by the Emergency Export Corporation, under a contract with the War Department, for the production of fertilizer grade ammonium nitrate, intended for export to areas occupied by United States and Allied Forces in Europe and Asia, to expedite and increase food production in such areas. The fertilizer produced from the contents of the shipments was eventually shipped overseas for distribution to civilians in occupied areas in Europe and Asia, to expedite and increase food production in those areas for consumption by the civilian population.

The Act of September 18, 1940, 54 Stat. 898, 954, Transportation Act of 1940, provides in part as follows:

"Sec. 321. (a) Notwithstanding any other provision of law, but subject to the provisions of sections 1 (7) and 22 of the Interstate Commerce Act, as amended, the full applicable commercial rates, fares, or charges shall be paid for transportation by any common carrier subject to such Act of any persons or property for the United States, or on its behalf, except that the foregoing provision shall not apply to the transportation of military or naval property of the United States moving for military or naval and not for civil use * * *."[1]

Plaintiff, on the authority of United States v. Powell, 330 U.S. 238, 67 S.Ct. 742, 91 L.Ed. 868, contends that the shipments moved for civil use. Defendant contends that the shipments were for the purpose of furnishing fertilizer to occupied areas, that this was a matter of vital military necessity, and, therefore, that they were for military use. It says that the fertilizer program was intended to prevent starvation, disease, and unrest which might result from famine in occupied areas, which might endanger the occupying forces or interfere with military operations. This, defendant says, brings the shipments in question within the spirit and the letter of section 321 (a), although the food to be produced was for use by the civilian population.

It is true that the increase of the food supply in occupied areas was aimed at preventing starvation, disease, and unrest in such areas,[2] and that benefits to our armed forces undoubtedly resulted from this program. It does not follow, however, that fertilizer shipped to occupied areas to increase food production for consumption by the civilian population is a shipment of property for military use within the meaning of section 321 (a).

The whole question presented in this case was fully discussed by the Supreme Court in United States v. Powell, supra.

---

1. The above exception was eliminated by the Act of December 12, 1945, 59 Stat. 606, 49 U.S.C.A. § 65(a). By section 2 of the Act, 49 U.S.C.A. § 65 note, the effective date of the amendment was October 1, 1946, but it provided that "any travel or transportation specifically contracted for prior to such effective date shall be paid for at the rate, fare, or charge in effect at the time of entering into such contract of carriage or shipment."

2. See, e. g., Act of July 16, 1946, Military Appropriation Act of 1947, c. 583, 60 Stat. 541, 560, which provides in part: "For expenses, not otherwise provided for, necessary to meet the responsibilities and obligations of the United States in connection with the government or occupation of certain foreign areas, * * *; such minimum supplies for the civilian populations thereof as may be essential to prevent starvation, disease, or unrest, prejudicial to the objectives sought to be accomplished * * *." See also Texas City Disaster Litigation, 5 Cir., 197 F.2d 771.

In that case the shipments involved were phosphate rock and superphosphate for use as farm fertilizer. They were shipped to Great Britain as a part of that country's wartime program for intensified production of food.

It was agreed in that case that the shipments were "defense articles" as defined in section 2 of the Lend-Lease Act of March 11, 1941, 55 Stat. 31, 22 U.S.C.A. § 411 et seq. The defendant also argued that there was a finding by the Executive that the shipments would promote our national defense, that the Lend-Lease Act was indeed a defense measure, and, in short, that all Lend-Lease "defense articles" fall within the except clause of the Transportation Act, that is, the clause which excepts "military or naval property of the United States moving for military or naval and not for civil use". The court rejected defendant's argument, and said, 330 U.S. at pages 243 and 245–246, 67 S.Ct. at page 744:

> "Under conditions of modern warfare, foodstuffs lend-leased for civilian consumption, sustained the war production program and made possible the continued manufacture of munitions, arms, and other war supplies necessary to maintain the armed forces. For like reasons, fertilizers which made possible increased food production served the same end. In that sense all civilian supplies which maintained the health and vigor of citizens at home or abroad served military functions.
>
> \* \* \* \* \* \*
>
> "\* \* \* When the resources of a nation are mobilized for war, most of what it does is for a military end— whether it be rationing, or increased industrial or agricultural production, price control, or the host of other familiar activities. But in common parlance, such activities are civil, not military. It seems to us that Congress marked that distinction when it wrote § 321 (a). If that is not the distinction, then 'for military or naval and not for civil use' would have to be read 'for military or naval use or for civil use which serves the national defense.' So to construe § 321 (a) would, it seems to us, largely or substantially wipe out the line which Congress drew and, in time of war, would blend 'civil' and 'military' when Congress undertook to separate them."

This seems to us decisive of the question presented in this case. In both cases the fertilizer was for use by civilians for the production of food. In both cases the incidental result aided the military effort, but since they were primarily for civilian and not for military or naval use, they do not come within the except clause of the Transportation Act.

The case at bar is somewhat stronger than the Powell case in that here the food to be produced was for consumption by the civilian population, whereas in the Powell case it may have been produced for use by the military and naval forces as well as by civilians.

We are clearly of the opinion that under the authority of that case the shipments were not "military \* \* \* property of the United States moving for military \* \* \* and not for civil use", and that plaintiff, therefore, is entitled to recover. The parties have stipulated that should plaintiff prevail, it is entitled to recover $902.44 in No. 48995, and $6,186.71 in No. 50151. Judgment for these amounts will be rendered.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN and LITTLETON, Judges, concur.